IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

DONOVAN TANNER,

                              Petitioner,                        Case No. 3:06 CV 701

                -vs-
                                                                 <u>MEMORANDUM OPINION</u>

ROBERT JEFFREYS, Warden,

                              Respndent.

KATZ, J.

        This matter is before the Court on the Report and Recommendation (R & R) of the

Magistrate Judge (Doc. 15) and Petitioner Donovan Tanner's objections to the R & R (Doc. 18),

without response by Respondent Warden Robert Jeffreys.  In accordance with *Hill v. Duriron Co.*,

656 F.2d 1208 (6th Cir. 1981) and 28 U.S.C. § 636(b)(1)(B) & (C), this Court has made a de novo

determination of those of the Magistrate Judge's findings to which Petitioner objects.

## I. Factual background

        The statement of facts pertaining to Petitioner's claims is adopted from the direct appeal

Opinion issued by the Second District Court of Appeals for Montgomery County, Ohio. (Ex. 12 at

pages 1-4). These binding factual findings "shall be presumed to be correct," and Petitioner has

"the burden of rebutting the presumption of correctness by clear and convincing evidence." 28

U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S.

1040 (1999); *Mitzel v. Tate*, 267 F.3d 524, 537 (6th Cir. 2001), *cert. denied*, 533 U.S. 966 (2002).

The facts are as follows:

During the evening of Saturday, April 19, 2003, the day before Easter Sunday, Mr. Tanner went to the family home of the victim, J.T.  Mr. Tanner is the first cousin of J.T.  J.T. has five siblings, and she shares a bedroom with her two sisters, Ruby and Tara.  That evening, however, Tara and Ruby spent the night at an aunt's house. At approximately 9:30 p.m., J.T.'s parents, Mike and Rhonda Tanner, retired to their bedroom.

J.T. recounted the events that occurred that night as follows: J.T., Mr. Tanner, and J.T.'s brother Roger and his girlfriend, Naomi Lunsford, were sitting in J.T.'s bedroom talking. At some point, Roger and Naomi left the room because it was getting late, and J.T. was left alone in the room with Mr. Tanner.  J.T. was sitting on Tara's bed, which was opposite her bed in the room. Mr. Tanner was sitting next to J.T. on the bed, but then moved from Tara's bed to sit on J.T.'s bed. Mr. Tanner then asked J.T. to scratch his back; J.T. moved over to her own bed to do so. The two started to talk about a new pair of shoes that J.T. had just bought, which led to a conversation concerning "if the shoe size was like the size of what a guy's penis was." Mr. Tanner answered the question in the negative, but did tell J.T. that "the width, what it would be would be your first finger and middle finger together." Mr. Tanner then asked J.T. whether "he could try to see if he could fit." J.T. then allowed Mr. Tanner to insert his two fingers into her vagina while she lay on her bed; at some point before this, J.T. had pushed her shorts off her waist. Mr. Tanner then unzipped his pants, and, without using a condom, inserted his penis into J.T.'s vagina. Mr. Tanner did not use force, and at that point in time, she assented to this action. After a few minutes, Mr. Tanner pulled out his penis, and J.T. saw him reach down with his hand. When J.T. got on her side to pull her shorts back up, she felt that the bed sheets were wet, and she identified the wetness as semen. J.T. then crawled over to Tara's bed and fell asleep while Mr. Tanner remained on her bed. J.T. had told Mr. Tanner that he could sleep in her bed because he had caused the wetness.

When J.T. awoke the next day, Easter Sunday, Mr. Tanner was not in the bedroom. J.T. and her family then went to her grandmother's house for Easter dinner. While at her grandmother's house, J.T. told Naomi about the incident, telling her that she had done "something bad," that she had "slept was Donny." J.T. confided in Naomi because she was afraid of possible pregnancy. Naomi confronted Rhonda, asking her if she had spoken to J.T. because J.T. had something to tell her. After dinner, J.T. returned home with her parents, Roger, and Naomi. While Rhonda was taking a bath, J.T. burst into the bathroom crying, and told Rhonda about the incident that occurred between her and Mr. Tanner the night before, that she had "slept with Donny[,]" and that she was afraid that she was pregnant and of getting in trouble for "[s]leeping with an older guy." Rhonda then called the police, despite J.T.'s threats of suicide if her mother did so.

Detective Sergeant Gary Hubbard arrived at the house, and J.T. told him what had happened. Rhonda then took J.T. to Akron Children's hospital, where J.T. was examined and a rape kit performed. After some examinations were done, Detective Hubbard transported Rhonda and J.T. back to their home, and collected bedding from the bed on which J.T. asserted the incident took place.

On December 3, 2003, Mr. Tanner was indicted for rape, in violation of R.C. 2907.02(A)(1)(b), a first degree felony. Mr. Tanner was tried by a jury, which returned a guilty verdict. The trial court sentenced Mr. Tanner to four years in prison, and found him to be a sexually oriented offender.

*State v. Turner*, 2005 WL 544809, *1-2 (Ohio Ct. App. 2005).

## II. Procedural background

Tanner was indicted by the October 2003 Term of the Medina County Grand jury on one count of rape in violation of Ohio Rev. Code § 2907.02(A)(1)(b).  On May 13, 2004, a jury found Tanner guilty of rape. On July 16, 2004, Tanner was sentenced to four years in prison, with credit for already seving 63 days, and was found to be a Sexually Oriented Offender. On July 26, 2004, the trial court ordered Tanner to register as a Sexually Oriented Offender. On August 3, 2004, the trial court granted Tanner's trial counsel's request to withdraw from further representation and appointed new counsel to represent Tanner on direct appeal.

On August 3, 2004, Tanner filed a timely Notice of Appeal. On October 25, 2004, Tanner, again with counsel, filed a brief raising three assignments of error: (1) Tanner's conviction was against the manifest weight of the evidence; (2) the court improperly denied Tanner's motion for acquittal per Crim. R. 29; and (3) the court improperly denied Tanner's effort to have the victim's credibility challenged by statements from the victim about her prior sexual behavior.  On March 9, 2005, the Ninth District of Appeals for Medina County, Ohio affirmed Tanner's conviction and sentence upon finding Tanner had waived his second assignment of error - because he had failed to renew his motion for acquittal at the close of the presentation of the evidence - and determining

3

there was no merit to the other two assignments of error.

On April 22, 2005, Tanner filed a timely pro se Notice of Appeal with the Supreme Court of Ohio. On April 29, 2005, a Motion to Dismiss was filed on behalf of the State of Ohio because Tanner had failed to file a Memorandum in Support of Jurisdiction. On May 3, 2005, the Supreme Court of Ohio *sua sponte* dismissed Tanner's appeal, agreeing with the State that Tanner had failed to file a memorandum supporting jurisdiction.

While Tanner's request for appellate review by the Supreme Court of Ohio was pending, he also filed, on March 15, 2005, a pro se Motion for Judicial Release with the trial court. On March 17, 2005, the trial court denied Tanner's motion. Subsequent to the trial court's having already denied the motion, an opposing response was filed on behalf of the State of Ohio, and Tanner had replied to the State's opposition. There is no record of Tanner appealing the trial court's denial of his motion. On September 20, 2005, Tanner filed, through new counsel, a second Motion for Judicial Release in the trial court.  On October 27, 2005, the trial court denied the motion, and there is again no record of Tanner appealing this second denial.

On January 20, 2006, Tanner filed a pro se Notice of Appeal and a Motion to File a Delayed Memorandum in Support of Jurisdiction in the Supreme Court of Ohio. On January 30, 2006, an objection was filed on behalf of the State of Ohio. On February 16, 2006, Tanner filed a pro se motion requesting the Ohio Supreme Court strike the State's objection from the record. On March 28, 2006, the Supreme Court of Ohio denied both of Tanner's motions.

On May 11, 2006, Tanner filed a second pro se Motion for Judicial release. On May 15, 2006, an objection to Tanner's motion was filed on behalf of the State of Ohio. On May 15, 2006, the trial court denied Tanner's motion. There is no evidence of Tanner appealing the trial court's

4

denial of his second *pro se* motion for judicial release.

## III. Jurisdiction

A federal court has jurisdiction to consider a petition for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court only on the grounds that he or she is in custody in violation of the Constitution of laws or treaties of the United States. *Leslie v. Randle*, 296 F.3d 518, 521 (6th Cir. 2002) (*citing* 28 U.S.C. § 2254 (Thomson/West 2002)).

Petitioner satisfies both prongs of the requirement for habeas jurisdiction. Petitioner was convicted in a state Common Pleas Court, and he is incarcerated at North Central Correctional Institution in Marion, Ohio.  Petitioner is "in custody" for purposes of habeas jurisdiction. Next, Petitioner alleges that the trial court violated his rights to the constitutional protections of the Fourteenth Amendment.  Such allegations, if true, violate the Constitution of the United States. Accordingly, this Court has jurisdiction.

## IV. Standard for habeas review under section 2254

AEDPA, which amended 28 U.S.C. § 2254, was signed into law on April 24, 1996.  In *Lindh v. Murphy*, 521 U.S. 320, 336 (1997), the United States Supreme Court held that the provisions of the AEDPA apply to habeas corpus petitions filed after that effective date.  *See also Woodford v. Garceau*, 538 U.S. 202, 210 (2003); *Barker v. Yukins*, 199 F.3d 867, 871 (6th Cir. 1999)("It is now well settled that AEDPA applies to all habeas petitions filed on or after its April 24, 1996 effective date.").  Because the habeas petition in this action was filed after the AEDPA took effect, the provisions of that Act apply. *Ford v. Curtis,* 277 F.3d 806, 808 (6th Cir. 2002) AEDPA was enacted "to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases, and 'to further the principles of comity, finality, and federalism.'"

*Woodford*, 538 U.S. at 206 (citing *Williams v. Taylor*, 529 U.S. 362, 436 (2000)).

When a Magistrate Judge issues a Report and Recommendation with regard to a petitioner's writ of habeas corpus, a district court reviews such findings de novo.  *Hill v. Duriron Co.*, supra, and 28 U.S.C. § 636(b)(1)(B) & (C).  The AEDPA states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim [**9] that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254.

The "contrary to" clause allows the granting of the habeas petition if the state court makes a conclusion opposite that reached by the Supreme Court on a similar question of law or facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). The "unreasonable application" clause allows the granting of the writ if "the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

Ordinarily, if a state court does not articulate its reasoning for ruling, the federal court must conduct an independent review of the record to determine whether the state court decision is contrary to the dictates of 28 U.S.C. § 2254. *Harris,* 212 F.3d at 943. However, if the state court decision is void of any results or reasoning that would allow a reviewing court to determine whether its decision was contrary to or involved an unreasonable application of Supreme Court

6

precedent, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented, then this court exercises its independent judgment and reviews the claim de novo. *McKenzie v. Smith,* 326 F.3d 721, 727 (6th Cir. 2003).

## V. Procedural Default

Before deciding whether to grant or deny a Writ, it must be determined at the outset "whether the petitioner has exhausted his claim in state court before we entertain the claim in a federal habeas petition." *White v. Mitchell*, 431 F.3d 517, 525 (6th Cir. 2005) (*citing Prather v. Rees*, 822 F.2d 1418, 1420 (6th Cir. 1987)). "A federal court will ordinarily not review an issue in a habeas corpus petition unless the petitioner has first exhausted the claim before the state court…" *Id*. (*citing* 28 U.S.C. § 2254(b); *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981)). "A petitioner has exhausted his claim if he has presented the substance of the claim to the highest court in the state." *Id.* (citing *Prather*, 822 F.2d at 1420).

> Petitioner makes the following claims: (1) the trial court improperly denied his motion for acquittal; (2) his conviction was against the manifest weight of the evidence; (3) he was deprived of the right to confront his accuser; and (4) he was deprived of the effective assistance of trial and appellate counsel.

Petitioner's claims (1), (2), and (3) were all brought on appeal to the Ninth District Court of Appeals for Medina County on October 25, 2004. *Id*. The appeals court affirmed the trial court's decision on March 10, 2005. As to claim (1), the Ninth District affirmed the trial court's decision as is. *Id*. As to claim (2), the Ninth District ruled Petitioner had waived his right to challenge the sufficiency of the evidence, because Petitioner's counsel failed to renew his motion for acquittal at the close of his presentation of evidence. *Id*. As to claim (3), the Ninth District disregarded this claim because Petitioner failed to direct the appeals court to the part of the record that was

necessary for the court's review. *Id.*

On April 22, 2005, Petitioner filed a timely pro se notice of appeal in the Ohio Supreme Court and motion for immediate stay. *Id.* The Supreme Court of Ohio dismissed Petitioner's appeal for failure to file a memorandum in support of jurisdiction within the 45 day time period. *Id.* Petitioner further filed another notice of appeal in the Supreme Court of Ohio on January 20, 2006. *Id.* The Supreme Court of Ohio considered this motion a delayed appeal, and denied the motion.

The substance of claims (1), (2), and (3) were never heard by the Supreme Court of Ohio, therefore, the Petitioner never exhausted his claims at the state level. Petitioner failed to file a memorandum in support of jurisdiction with the Supreme Court of Ohio, thus resulting in a procedural default at the state level.

The Sixth Circuit U.S. Court of Appeals laid out a four-part analysis for the district courts to use when the State alleges a habeas claim is precluded by procedural default. *Maupin v. Smith*, 785 F.2d 135, 138 (1986).

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.

> Second, the court must decide whether the state courts actually enforced the state procedural sanction.

> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims.

> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate  under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

> *Id.*

8

With regard to the first prong of the analysis, the state procedural rule S. Ct. R. 11, §

2(A)(3)(b) states:

> A memorandum in support of jurisdiction shall be filed no later than 45 days from
> the entry of the court of appeals judgment being appealed. The Supreme Court will
> dismiss the appeal if the memorandum in support of jurisdiction is not timely filed
> pursuant to this provision.

This is an applicable state rule with which petitioner did not comply.

With regard to the second prong of the analysis, the Ninth District's judgment was rendered

March 9, 2005, which gave the Petitioner until April 23, 2005 to file a memorandum in support of

jurisdiction with the Supreme Court of Ohio. (Doc. 15). While Petitioner did timely file a notice of

appeal with the Supreme Court of Ohio on April 22, 2005, Petitioner did not file a memorandum in

support of jurisdiction. *Id*. The Supreme Court of Ohio dismissed Petitioner's appeal on May 3,

2005 for not filing a memorandum in support of jurisdiction. *Id*. The Supreme Court of Ohio

dismissed Petitioner's appeal because of this procedural default.

"The third prong of the *Maupin* analysis is determining whether the state procedural bar is

an adequate and independent ground on which the state can rely to foreclose review of a federal

constitutional claim." *Barkley v. Konteh*, 240 F. Supp. 2d 708, 713 (N.D. Ohio 2002). Petitioner's

failure to file a timely appeal is an adequate and independent ground on which the state can rely to

foreclose review. *County Court of Ulster County, New York v. Allen,* 442 U.S. 140, 148 (1979).

"The Ohio Supreme Court Rules of Practice clearly show that a denial of a motion for delayed

appeal is a procedural denial. Further, Ohio cases appear to have consistently held such a denial to

be a procedural bar." *Barkley*, 240 F.Supp.2d at 713. Therefore, the third prong of the analysis is

met.

Once all three prongs have been met, Petitioner's claims are barred from federal habeas

9

review unless he can show "cause and prejudice" for the procedural default. *Id*. (*citing Reed v. Farley,* 512 U.S. 339, 354 (1994)). "For [Petitioner's] ineffective assistance of counsel claim to serve as cause to overcome his procedural default of another claim, the ineffective assistance claim itself must not be subject to procedural default." *Id*. "A 'claim of ineffective assistance' … generally must 'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'" *Edwards v. Carpenter,* 529 U.S. 446 (2000) (quoting *Murray v. Carrier,* 477 U.S. 478, 489 (1986)).

Petitioner had the opportunity to raise a claim for ineffective assistance of counsel with the Supreme Court of Ohio, but failed to do so. In Petitioner's motion requesting the proceedings (appeal to Supreme Court of Ohio) be stayed so he could file a memorandum in support of jurisdiction, he never mentioned the reason he needed the extension was because of ineffectiveness of his counsel.  Petitioner fails to mention any of the claims against his counsel he now attempts to raise.  Before Petitioner can use an ineffective assistance of counsel claim to show cause and prejudice for his procedural default, Petitioner must have brought the ineffective assistance of counsel claim as an independent claim in the state courts. *Edwards*, 529 U.S. at 446. Petitioner in this case has not brought an ineffective assistance of counsel claim in the state courts, therefore, he cannot use this claim to show cause and prejudice.

Furthermore, "[a]ttorney error amounting to ineffective assistance of counsel does constitute cause within the cause and prejudice doctrine." *Barkley*, 240 F. Supp. 2d at 708 (citing *Murray v. Carrier,* 477 U.S. 478, 488 (1986)). "However, attorney error cannot constitute cause where the error caused a petitioner to default in a proceeding in which the petitioner was not constitutionally entitled to counsel, including a discretionary appeal." *Id*. (citing *Coleman v.*

10

*Thompson*, 501 U.S. 722, 751-53 (U.S. 1991)). The constitutional right to appointed counsel extends to the first appeal of right and no further. *Id*. (*citing Pennsylvania v. Finley,* 481 U.S. 551, 555 S. Ct. 1990 (1987) (stating "Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further. Thus, we have rejected suggestions that we establish a right to counsel on discretionary appeals …. Ineffective assistance on a discretionary appeal or in a post-conviction proceeding, both of which are proceedings in which there is no constitutional right to counsel, cannot constitute cause for a procedural default.") (citations omitted); *Ross v. Moffit,* 417 U.S. 600, 609-10 (1974); *State v. Mapson,* 41 Ohio App.3d 390, 391 (Ohio Ct. App. 1987)).

Therefore, Petitioner had no constitutional or state right to counsel on his discretionary appeal to the Supreme Court of Ohio. Consequently, Petitioner's procedural default which occurred on appeal to the Supreme Court of Ohio cannot be attributed to counsel, because Petitioner was not entitled to counsel for that appeal.

**VI. Conclusion**

For the reasons discussed herein the  Magistrate Judge Judge's Report and Recommendation is adopted in its entirety.  Petitioner's application is hereby denied.

IT IS SO ORDERED.

   s/ *David A. Katz*
DAVID A. KATZ
U. S. DISTRICT JUDGE

11